

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

*Benjamin Levin*
*Assistant United States Attorney*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*
*Direct Dial: (973) 645-2762*

April 28, 2021

**Via ECF**

The Honorable John Michael Vazquez
United States District Judge
Post Office & U.S. Courthouse
2 Federal Square
Newark, New Jersey 07102

      Re:   United States v. Steven Brooks
                Crim. No. 21-314

Dear Judge Vazquez:

      The Government respectfully submits this letter brief in opposition to Defendant Steven Brooks's appeal from Magistrate Judge Falk's denial of his request for pre-trial release pursuant to 18 U.S.C. § 3142(g).

      The Defendant poses a grave danger to the community—especially children—and his proposed bail package is insufficient to ensure the safety of the public. The Defendant has been a schoolteacher in New Jersey for over a decade. As explained below, not only did the Defendant's hard drive contain dozens of pornographic videos and images of minors, but it also contained videos of his active recruitment of minors to send him sexually explicit materials. Worse, when some of these minors tried to cut off communication with the Defendant, the Defendant sent the minors threatening messages to convince them to send him more pornographic images. Moreover, given the strength of the evidence in the case and the high likely penalties associated with the charges if convicted, the Defendant poses a flight risk. The Court should deny his request for pre-trial release under any conditions.

      Importantly, two of the three pending charges against the Defendant carry a rebuttable presumption of detention: (1) production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), as charged in Count One, *see* 18 U.S.C.

§ 3142(e)(3)(E); and (2) mailing child pornography, in violation of 18 U.S.C. § 2252A(a)(1), as charged in Count Three, *see id.*

The Defendant has not adequately rebutted the presumption of detention. Detention is warranted given the predatory and exploitive nature and circumstances of the offense and the history and characteristics of the Defendant. Further, the renewed application does not sufficiently address Judge Falk's concerns and prior findings that there are no conditions or combination of conditions that could assure the safety of the community or the Defendant's appearance at future proceedings.

## **PROCEDURAL HISTORY**

At his initial appearance on February 16, 2021 before Magistrate Judge Cathy L. Waldor, the Defendant consented to detention without prejudice to file a bail application at a later date. ECF 6.

On February 23, 2021, the Defendant presented a bail package with the following proposed conditions: home incarceration at the Defendant's parents' residence; location monitoring; a prohibition on possessing any illicit materials; a prohibition on communication over social media networks or on any electronic device; the surrender of the Defendant's passport; and the posting of an appearance bond.

On March 10, 2021, Pretrial Services issued a report based on the Defendant's February 23, 2021 bail proposal with a continued recommendation of detention. The Defendant's motion for release was referred to Magistrate Judge Falk, and a hearing was scheduled for March 12, 2021.

On March 11, 2021, Judge Falk scheduled a phone conference with the parties and requested written submissions before conducting a bail hearing. The hearing was rescheduled from March 12, 2021 to March 19, 2021. On March 17, 2021, the Defendant filed a letter in support of his release from detention, and the Government filed its opposition to that request on March 18, 2021. ECF 11.

During the Defendant's bail hearing before Judge Falk on March 19, 2021 (the "Initial Bail Hearing"), Judge Falk found there was clear and convincing evidence that the Defendant presented a danger to the community if released and also found by a preponderance of the evidence that the Defendant was a flight risk and ordered the Defendant detained pending trial. *See* ECF 13. Specifically, Judge Falk concluded that "the defendant poses a grave danger to the community, specifically to children; perhaps to others…[and] that there is a genuine risk of flight." *See* Transcript of Initial Bail Hearing, attached as Ex. 1,

19:11-12, 19:17-18.  As a result, Judge Falk denied the Defendant's bail application.

On or about April 14, 2021, the Defendant filed a notice of appeal of Judge Falk's denial of bail.  ECF 16.  As set forth below, there has been no change in circumstances since the Initial Bail Hearing, and the Defendant remains a danger to society and a flight risk.  The Defendant's proposed bail package is the same one that Judge Falk already rejected, and Pretrial Services continues to recommend detention.   Because detention is the only way to ensure the safety of the public and to guarantee the Defendant's appearance in court, his bail request should be denied, and he should remain detained pending trial.

## BACKGROUND

In January 2021, law enforcement was notified about possible child pornography on an external hard drive belonging to the Defendant.  Specifically, on January 28, 2021, law enforcement met with employees of Company-1, which is located in California, regarding an external hard drive that the Defendant had mailed earlier that month from New Jersey to Company-1 to repair a mechanical issue.

Previously, on January 20, 2021, the Defendant sent an email to an employee ("Employee-1") from Company-1 where the Defendant wrote that the Defendant had sensitive and private information on the hard drive that the Defendant was concerned about people at Company-1 having access to.  The Defendant sent this email after learning about Company-1's privacy policies.

During the data recovery process on the hard drive, a Data Recovery Engineer who works at Company-1 ("Employee-2") opened a folder and saw numerous thumbnail images which Employee-2 believed to be child pornography.  After viewing these images, Employee-2 discontinued the recovery process and contacted the FBI.

On January 28, 2021, law enforcement reviewed a relatively small quantity of media files on the hard drive to confirm the existence of child pornography on it.  In its limited review, law enforcement saw copious child pornography on the Defendant's hard drive.  Law enforcement then obtained a search warrant and extensively searched the hard drive.

Separately, the investigation has revealed that the Defendant is utilizing a fake online persona ("Fake Online Persona-1") on a social media account ("Social Media Account-1") to solicit nude photos and videos from teenage victims.  In the Fake Online Persona-1 folder on the Defendant's hard drive, law enforcement observed photographs of a young person in different folders that were labeled by

subject, including names like "Bathing Suits," "Nude," "Partying," and "Skin Pictures." A folder labeled "Clips" contains video files that depict a person engaging in oral sex, a person masturbating, and picture files of a naked person masturbating on a bed. As outlined below, the Defendant used these images and videos to develop Fake Online Persona-1.

One of the sub-folders within this folder is entitled with the first name of a male who was under the age of eighteen ("Minor Victim-1") at the time several of the images and cell phone recordings within the folder were made. The folder for Minor Victim-1 contains multiple image files and multiple movie files, including one movie file depicting what appears to be a cell phone recording from Social Media Account-1 that appears to have been recorded in or around October 2019. The video shows that Social Media Account-1 communicated with a username corresponding to Minor Victim-1's social media account on the same social media platform. In the conversation, Social Media Account-1—controlled by the Defendant—sent Minor Victim-1 a video of a person masturbating. Importantly, this video is also contained within the Fake Online Persona-1 folder found elsewhere on the Defendant's hard drive. Thereafter, Social Media Account-1 typed "Cum for me daddy." Minor Victim-1 then sent a video to Social Media Account-1 that depicts Minor Victim-1 masturbating; Minor Victim-1's penis and part of his face are visible in the video.

Another of the sub-folders within the above-referenced "Personal" folder is titled with the first and last name of a male who, based on information in law enforcement's possession, law enforcement believes was under the age of eighteen ("Minor Victim-2") at the time the photos referenced below were taken. There are 37 images within the folder, all of which law enforcement believes depict Minor Victim-2. Three of the images show Minor Victim-2 standing in a bathroom taking a "selfie," or photograph of himself, in the mirror. In the images, Minor Victim-2 is wearing a black t-shirt and no pants. Minor Victim-2's face and penis are visible in at least three images. In two of the three images, Minor Victim-2 is holding his penis up with his hand to make his penis more visible to the images' recipient.

One of the sub-folders within the above-referenced "Personal" folder is entitled with the first name and the first letter of the last name of a male. Based on its investigation, law enforcement believes this male was under the age of eighteen ("Minor Victim-3") at the time that several of the images and videos were taken. There are several images of Minor Victim-3 within that folder, including at least three unique pictures of Minor Victim-3 standing in a bathroom taking a "selfie" in the mirror. In each image, Minor Victim-3 is naked, with his face and penis visible. The folder also contains at least three videos in which Minor Victim-3 was masturbating where Minor Victim-3's face and penis were visible.

Based on the images of child pornography seen on the Defendant's hard drive, the Defendant was charged in a federal Complaint on February 16, 2021 with the following crimes: (1) production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) and 18 U.S.C. § 2; (2) possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2; and (3) mailing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and (2). *See* Mag. No. 21-9067.

## **LEGAL STANDARD**

A district judge reviews a magistrate judge's decision regarding bail de novo." *United States v. Livingston,* 2016 WL 1261464, at *1 (D.N.J. Mar. 31, 2016) (Cecchi, J. (citing *United States v. Delker,* 757 F.2d 1390, 1394-95 (3d Cir. 1985)). "While the district court may find it useful to consider the decision and reasoning of the magistrate judge, the Court must make an independent determination regarding a defendant's eligibility for release on bail." *Id.*[1]

The Bail Reform Act of 1984 highlights two criteria the Court is to consider when making determinations of release or detention: (1) risk of flight, and (2) safety to the community. When making a determination regarding the eligibility of a defendant for pretrial release, the Bail Reform Act directs the Court to consider: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the history and characteristics of the person(s), and (4) the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g).

Because of the nature of the crimes with which the Defendant is charged, there is a statutory presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community if released. *See* 18 U.S.C. § 3142(e)(3)(E). While the government bears the ultimate burden of persuasion, the presumption in favor of detention remains even after the Defendant's production of evidence. The Defendant may rebut this presumption by presenting "some credible evidence forming a basis for the contention that he will appear and will not pose a threat to the community." *United States v. Carbone,* 793 F.2d 559, 560 (3d Cir. 1986). If the Defendant meets the burden of production, the burden shifts back to the government to prove a risk of flight by a preponderance of the evidence or dangerousness by clear and convincing evidence. *See United States v. Perry,* 788 F.2d 100, 114-15 (3d Cir. 1986). Here, the Defendant has failed to rebut the presumption of detention.

---

[1] Judge Falk's decision was rendered after careful consideration. He ordered the Defendant's detention after a lengthy oral argument following a careful review of the written submissions by the parties, and he even "agonized over the – this type of case, and this decision…" *See* Transcript of Initial Bail Hearing, attached as Ex. 1, 19:7-8.

**ARGUMENT**

**I.     The Defendant is Not Entitled to Release Pursuant to § 3142(g).**

**A.     The Defendant is a Danger to the Community.**

The Defendant's conduct here warrants the Defendant's continued detention. First, the strength of the Government's evidence is overwhelming. The Defendant's hard drive indisputably belongs to him. The Defendant sent an email to Company-1 that reflected that he knew what the hard drive contained when he referred to the "sensitive and private information" on his hard drive. Further, the sheer number of images and videos of different minors makes it impossible that they could have existed on the Defendant's hard drive by accident. That point is buttressed by the fact that the Defendant personally knows at least some of the minor victims from his work as a youth instructor and schoolteacher for over a decade. All of these facts strongly suggest that the Defendant knew his hard drive contained sexually explicit photos and videos of minors.

Second, the nature and circumstances of the offenses are very serious, as the charges in the Complaint consist of "crimes of violence." *See* 18 U.S.C. § 3142(f)(1)(A). The charges in the Complaint pertain to conduct involving four minor victims. Since the date of the Complaint's filing, the Government has confirmed the ages of four additional minor victims ("Minor Victim-5," "Minor Victim-6," "Minor Victim-7" and "Minor Victim-8") from sexually explicit content on the Defendant's hard drive. The four additional minor victims are high school students in New Jersey; three of the four high school students had ties to Brooks through his employment activities with children. The Government expects to identify additional minor victims as the investigation continues because there are pornographic images and videos of approximately thirty additional suspected minors on the Defendant's hard drive.

While it is troubling enough that the Defendant has illicit pornographic images and videos of minor victims on his hard drive, the Defendant's conduct and interactions with some of the minor victims are even more alarming. Specifically, Minor Victim-1 knows the Defendant and is a high school student in New Jersey. After Minor Victim-1 blocked Fake Online Persona-1 (controlled by the Defendant) on social media, the Defendant emailed Minor Victim-1 on Minor Victim-1's school email address and harassed him to continue speaking with the Defendant on another social media account. For several weeks, the Defendant threatened to tell other students that Minor Victim-1 was circulating a naked photo of another student if Minor Victim-1 did not communicate with the Defendant and send additional illicit images to him. These threats negatively

affected Minor Victim-1 in several ways, including damaging Minor Victim-1's academic performance.

Likewise, Minor Victim-6 sent videos and images to the Defendant through Fake Online Persona-1 during the course of their exchanges on social media. During their exchanges, the Defendant sent harassing messages to Minor Victim-6 in an attempt to entice Minor Victim-6 to send additional illicit images.

Third, the proposed bail package is insufficient to prevent the Defendant's access to computers, phones, or other technology that would enable him to try to communicate with the minor victims or other minors. The Defendant's parents' apparent intention to password-protect their electronic devices, rather than removing all electronic devices from their home, is insufficient. However, even if all of the electronic devices were removed from the Defendant's parents' home, a proposal also made by the Defendant, there is no guarantee that the Defendant will not gain access to another electronic device. Judge Falk acknowledged as much when he stated that "something could be ordered from one of those online – like an Amazon thing or someone could, you know, drop off a burner phone or other things could happen and – unless the defendant was being monitored or watched every minute of every day." Ex. 1, 23:12-16. Because there is no way to guarantee that the Defendant won't gain access to an electronic device, the Defendant's proposal is insufficient to ensure the safety of the community.[2]

The foregoing facts outline reprehensible, threatening, and permanently damaging conduct that the Defendant repeated time and again with minor victims. The threat he poses to the community at large and to each of the minor victims is sufficiently great to require detention. Because the Defendant has failed to present *any* "credible evidence" that he is not a "threat to the community," he should remain detained. *See Carbone*, 793 F.2d at 560.

### B.    The Defendant Poses a Risk of Flight if Released.

The Defendant also poses a risk of flight, as the nature and circumstances of the offenses he is charged with are extremely serious. Based on the strength

---

[2] The concept of "safety of the community" may include non-physical harm. *See United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) (*citing United States v. Giampa,* 904 F.Supp. 235, 358 (D.N.J. 1995); *United States v. Provenzano,* 605 F.2d 85, 95 (3d Cir. 1979) ("[a] defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within contemplation of [the Bail Reform Act])"; *see also* S. Rep. No. 225, 98th Cong., 2d. Sess. 12, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195 ("The [Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").

of the evidence, there is a high likelihood of conviction. If convicted, the Defendant is facing, on Count One, a mandatory minimum term of imprisonment of fifteen years and a maximum potential sentence of thirty years in prison. Count Three includes a mandatory minimum term of imprisonment of five years and a maximum potential sentence of twenty years in prison. Such high mandatory minimum sentences are incentives to flee, even in a scenario like here where a defendant has no prior criminal history or failures to appear.

Further, based on the Defendant's financial resources, the Defendant has the means to flee if he is released from custody. Moreover, the Government has identified additional minor victims, and any potential Indictment in this case will likely include additional charges on top of what was charged in the Complaint. *See United States v. Abdullahu*, 488 F. Supp. 2d 433, 443 (D.N.J. 2007) ("The fact that defendant may possibly be indicted for other offenses creates another incentive to flee.").

Additionally, while the Defendant has been employed as a schoolteacher and youth instructor for a long time, he is unlikely to return to teaching if he is released during the pendency of this case because of the nature of the charges. The Defendant's lack of employment upon release damages his ties to the community. *See Abdullahu*, 488 F. Supp. 2d at 442 ("It is true defendant had recent steady employment but there is no guarantee that if released he will have a job…It is clear to the Court that defendant has the motive and means to flee if he is released.").

While the Defendant proposes a bail package that includes home confinement at his parents' residence, along with location monitoring, those conditions simply are inadequate to ensure that the Defendant will not flee. The Defendant could remove such a location monitoring device, as electronic monitoring "impedes but does not prevent a defendant from fleeing." *Id; see also United States v. Orena,* 986 F.2d 628, 632-33 (2d Cir. 1993). Judge Falk recognized this possibility when he stated that "I think the defendant still would have access to the sufficient resources to cut the bracelet." Ex. 1, 22:20-21. The presence of the Defendant's immediate family in New Jersey is insufficient on its own to assure his presence at trial. *See Abdullahu*, 488 F. Supp. 2d at 442.

## II. The Current Conditions at the Hudson County Correctional Center and Generalized Fears of COVID-19 Do Not Justify Release.

The Defendant also argues that his continued detention during the COVID-19 pandemic interferes with his Sixth Amendment right to effective assistance of counsel. *See* Def. Bail Motion at 8-9. The Defendant also stated that "[i]n person visits are not permitted at the facility where Mr. Brooks is detained." Def. Bail Motion at 8. That is inaccurate. *See* Ex. 2, Edwards Decl.

¶ 12(i) ("For attorney visits, web-based video visitation is available free of charge. *Non-contact visitation where attorney and detainee/inmates meet* are separated by a glass partition is also available.") (emphasis added). The Defendant's argument should be rejected because the Defendant has not demonstrated that the current conditions at the Hudson County Corrections Center ("HCCC") will have a more serious impact on the Defendant's Sixth Amendment rights than on those of similarly situated detainees.

Courts consistently find that a pretrial detainee's right to counsel is infringed only when prison regulations unreasonably burden or significantly interfere with the detainee's access to counsel. *United States v. Dawara*, No. 19-CR-414-1, 2020 WL 2404898, at *8 (E.D. Pa. May 12, 2020 *(citing Benjamin v. Fraser*, 264 F.3d 175, 187 (2d Cir. 2001)). To be sure, the COVID-19 pandemic has forced prisons around the country to take significant steps to protect their populations, and HCCC is no different. But those steps do not amount to a violation of a defendant's right to counsel.

Despite the reasonable restrictions that have been implemented by HCCC to mitigate against the spread of COVID-19, detainees are still provided ample opportunities to interact with counsel, including by mail, over the phone, through videoconferences, and as described above, in person. *See* Ex. 2 ¶¶ 12(i) and 12(j) ("HCCC also facilitates confidential telephone calls between detainees and inmates and their attorneys.").

Indeed, other courts have rejected similar arguments. For example, the Chief District Judge in the Eastern District of Pennsylvania rejected a defendant's claims that FDC Philadelphia's restrictions on his access to counsel required release under Section 3142(i) and the Sixth Amendment. *See Dawara*, 2020 WL 2404898, at *8. Although the Court acknowledged limitations on the defendant's ability to meet with his attorney, it held that "[c]onsidering the measures necessary for the BOP to prevent spread of COVID-19 in its institutions, the suspension of legal visits could hardly be viewed as unreasonable." *Id.* at *8; *see also United States v. Corbitt*, No. 20-CR-00030, 2020 WL 2098271, at *8 (M.D. Pa. May 1, 2020) (rejecting motion for release under Section 3142(i) and noting that "[i]f federal courts had to order temporary release just because it would aid a defendant's ability to work with counsel, the exception in section 3142(i) would swallow all detention orders") (quotation omitted); *United States v. Olszewski*, No. 15-Cr-364, 2020 WL 2420483, at *3 (S.D.N.Y. May 12, 2020) (despite defendant's argument that he was "unable to meet with his attorney in person and is only able to speak with her by phone in a limited capacity," holding that BOP's limitations "do not constitute an 'extraordinary and compelling reason' making compassionate release appropriate"); *United States v. Landji*, No. 18-CR-601 (PGG), 2020 WL 1674070, at *6 (S.D.N.Y. Apr. 5, 2020) ("Although the Court is concerned about [defendant's] access to counsel, it cannot find that BOP's decision to suspend all

- 9 -

legal visits for 30 days is unreasonable in light of the global pandemic and the threat it poses to inmates, residents of New York City, and the nation at large").

Even though Brooks has the ability to meet in person with his attorney, there also is less of an immediate need for extensive consultation, at least compared to other cases with more urgent deadlines. As a district court in the Central District of California ruled in denying release on COVID-19 grounds, "the fact of the matter is that no jury trial will be conducted until conditions in the Central District normalize. Notwithstanding any current limitations on attorney visits, there will be an adequate opportunity to prepare once conditions normalize." *United States v. Avenatti*, Crim. No. 19-61 (JVS), at 2-3 (C.D. Cal. Mar. 21, 2020).

Indeed, this is one of the reasons that makes *United States v. Deutsch*, cited by Defendant, inapposite to this case. No. 18-CR-502, 2020 WL 3106383, at *2 (E.D.N.Y. June 4, 2020). There, the defendant had an upcoming trial date, and there was no ability to prepare for that trial during in-person legal visits, which were not permitted at that time. Thus, the court granted release given the nature of the specific circumstances of that case, the impending trial date, and the more restrictive conditions that prisons used at the beginning of the pandemic.

Here, there is no scheduled trial date, there are no evidentiary hearings scheduled, and an indictment has not yet been returned by a grand jury. Moreover, there is no indication that Defendant's release would improve his ability to meet and confer with defense counsel.

In sum, the Defendant has not shown that HCCC's restrictions are unreasonable or that they violate his right to counsel, and thus he has not presented a valid Sixth Amendment claim. The Defendant is a danger to the community – and one who poses a grave risk of flight – he should therefore be detained pending trial.

## **CONCLUSION**

     For the reasons set forth above, the Government respectfully submits that the Defendant cannot show that any condition or combination of conditions will sufficiently ensure the safety of the community and his appearance in court. Accordingly, his appeal should be denied.

                                            Respectfully submitted,

                                            RACHAEL A. HONIG
                                            Acting United States Attorney

                                        By:   Benjamin Levin
                                                  Assistant U.S. Attorney