# EXHIBIT 1

                      UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,          .
                                   .
        Plaintiff,                 .
                                   .  Case No. 21-mj-09067
vs.                                .
                                   .  Newark, New Jersey
STEVEN BROOKS,                     .  March 19, 2021
                                   .
        Defendant.                 .
                                   .


                    TRANSCRIPT OF BAIL HEARING
                  BEFORE THE HONORABLE MARK FALK
                 UNITED STATES CHIEF MAGISTRATE JUDGE


APPEARANCES (the parties appeared via Zoom videoconference):

 For the Government:      BENJAMIN LEVIN, ESQ.
                          DOJ-USAO
                          U.S. Attorney's Office, District of NJ
                          970 broad street, Suite 7th Floor
                          Newark, NJ 07102
                          (973) 645-2762
                          benjamin.levin@usdoj.gov


 For the Defendant:       ALAN L. ZEGAS, ESQ.
                          60 Morris Turnpike, Third Floor West
                          Summit, NJ 07901
                          (973) 379-1999
                          azegas@zegaslaw.com




Audio Operator:

Transcription Service:     KING TRANSCRIPTION SERVICES
                           3 South Corporate Drive, Suite 203
                           Riverdale, NJ  07457
                           (973) 237-6080


Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

1                        I N D E X

2

3    Proceeding                                    Page

4        Proceedings                               3

5        The Court's Ruling                        19

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    (Commencement of proceedings)

 2

 3              THE COURT OFFICER:  United States of America v.

 4    Steven Brooks, Docket 21-9067.

 5              Judge Falk, you're on the record.

 6              THE COURT:  All right.  Good morning.

 7              May I have the appearances of counsel, please.

 8              MR. LEVIN:  On behalf of the United States,

 9    Benjamin Levin, L-e-v-i-n.

10              Good morning, Judge.

11              THE COURT:  Good morning.

12              MR. ZEGAS:  Alan Zegas for Steven Brooks.  I have a

13    little laryngitis.  I apologize.

14              THE COURT:  Yeah, great.  Great.

15              Lorraine, can we have the -- mute because it's too

16    loud.  I can't hear Mr. Zegas.

17              Thank you.  And, again, if that has to change,

18    that's fine.

19              So all right.  You know, the defendant had appeared

20    before another judge for initial appearance and had consented

21    to detention.  And then when I was on duty, there was a

22    request for bail, a bail application.  The Government is

23    seeking detention.  And it sort of came up at a time when I

24    had limited time, so I did ask for some papers, and both

25    sides submitted essentially letter briefs, very carefully
```

1  analyzing the situation, which I have read and am prepared to

2  deal with.

3          So the Government is seeking detention in this

4  case.

5          Mr. Levin, I'll hear from you, if you wish to be

6  heard.

7          MR. LEVIN:  Yes, Judge.  Thank you.

8          Judge, the Government is asking for detention in

9  this matter.  It's our position that the defendant poses a

10  great risk to the community, especially children.  And his

11  proposed bail package is insufficient to ensure the safety of

12  the public.

13          The defendant has been a school teacher in New

14  Jersey for over a decade.  He's also worked in other

15  capacities with children.  And in terms of the matter before

16  the Court and the current charges, the defendant's hard drive

17  in question contained dozens of pornographic videos and

18  images of minors, but what was even worse was that it also

19  contained videos of active recruitment of minors to send him

20  sexually explicit materials.

21          Again, as the Government noted in our letter brief,

22  when some of the minors tried to either cut off communication

23  or stop sending illicit materials to the defendant, the

24  defendant, through the fake online persona that he created,

25  sent the minors threatening messages to -- in an attempt to

1    convince them to continue to send him pornographic materials,

2    threatened to essentially embarrass these children in public

3    if they wouldn't apply with his demands.

4            And so in terms of the Government's -- in terms of

5    those factors, he's a danger to the community.  We also

6    believe the strength of the case is overwhelming here, and

7    the high likely penalties associated with the charges also

8    makes the defendant a flight risk.  So it's our position that

9    he's both a danger to the community and a risk of flight.

10           We're asking that the Court should deny the request

11   for pretrial release under any conditions.  We'll note

12   specifically, Judge, in terms of a strength of the case, a

13   company in Washington notified the FBI at the end of January

14   that they observed what they thought was child pornography,

15   and other related items on the defendant's hard drive.  And

16   in terms of possession, one of the elements of any potential

17   trial that may happen in this case, the hard drive in

18   question is undisputably the defendant's hard drive.  There's

19   no dispute.  There cannot be a dispute that it's his hard

20   drive.  And so the question would be the content of it, which

21   also, in our view, is not in dispute, based on the images and

22   the videos.

23           As the complaint and the facts in our letter brief

24   note, the defendant sent an email to that company in

25   California stating in substance and in part, that he had

1    private and sensitive information on the drive that he was

2    concerned about other people at the company having access to.

3    And in our view, that's consciousness of guilt.  And it also

4    goes to the defendant's knowledge of the hard drive's

5    contents.

6            And then specifically, Judge, relating to the

7    strength of the current charges in the complaint, the

8    Government in this matter learned about this in late January.

9    We moved as quickly as we possibly could after being alerted

10   by that company in California about the possible child

11   pornography to figure out exactly what we had here.  And

12   then, if warranted, which it was, to bring the appropriate

13   charges.

14           We note that the speed with which the Government

15   moved from finding out about the images and other materials

16   on the hard drive, we note that in his bail application,

17   because this investigation is very much ongoing.  Even since

18   the date of the filing of the complaint, the Government has

19   identified initial minor victims pursuant to a search warrant

20   of the hard drive and in terms of the analysis of the hard

21   drive's contents.

22           And so, as we noted in our letter brief, again, as

23   it goes to risk of flight and danger to the community, there

24   are more victims here than what are even outlined in the

25   complaint.  And so any potential indictment in this matter

1   will cover additional children for which the defendant, as it

2   would be alleged, had inappropriate contact with.

3           And so that, in turn, would increase the potential

4   maximum exposure that the defendant would face on any -- on

5   any sentence that he may get in this case.

6           And so what do we have here in terms of -- so,

7   again, as to the Government's position regarding the strength

8   of the evidence, we believe that it is overwhelmingly strong.

9   And so that's -- and that is a critical aspect in terms of

10  how the Court should analyze the danger to the community, but

11  also the risk of flight.

12          So specifics, what do I mean, Judge, specifically

13  in terms of danger to the community?  Access to children is

14  really concerning here.  The defendant, as I mentioned, was

15  an elementary school teacher, and he helped run a youth

16  soccer program.  His résumé indicates prior experience at an

17  elementary school, at another school, work at a day camp.

18          So, simply put, the defendant has been around

19  hundreds of children during the course of his career.  Minor

20  Victim 1 in the complaint is a high school student in New

21  Jersey that the defendant knew, which, again, goes towards

22  his knowledge that the illicit material of that minor on the

23  hard drive was, indeed, images of a minor.  It's extremely

24  concerning, because, as specifically relating to Minor

25  Victim 1, as outlined in our letter brief, there was

1   essentially a threat made by the defendant to Minor Victim 1

2   when Minor Victim 1 decided to block the defendant on

3   Instagram, telling Minor Victim 1 that if -- if Minor

4   Victim 1 didn't continue to send illicit materials, that the

5   defendant would essentially spread a falsehood about Minor

6   Victim 1 to other people in the school; specifically, the

7   defendant reached out to Minor Victim 1 on Minor Victim 1's

8   school email account, Judge.  And so we find that behavior to

9   be extremely concerning.

10          Also that Minor Victim 1 was affected in a very

11  negative way, based on the defendant's conduct emotionally,

12  which I think would go without saying, but also in terms of

13  academically, which also, you know, is important in terms of

14  where Minor Victim 1 is.

15          Additionally, regarding danger to the community,

16  Minor Victim 5 is a current high school student who knew the

17  defendant.  Minor Victim 6, current high school student in

18  New Jersey.  Minor victims 7 and 8 are also high school

19  students in New Jersey.

20          And so some of these, as I've mentioned, some of

21  these minors have had dealings with the defendant, "dealings"

22  meaning he knows who they are.  He knows how old they are.

23  And he knows that they are children, Judge.

24          And so, to us, you know, protecting children,

25  there's nothing that's more important in terms of a societal

1    concern and the -- specifically what we believe to be the

2    defendant's danger to the community.

3              We also believe that the other minor victims that

4    are described in the complaint are high school students who

5    don't live in New Jersey, so we believe not only is the

6    defendant a threat to the community locally, but he's a

7    threat in other states as well, Judge.  And so as we noted in

8    the letter brief, we estimate that there's in the ballpark of

9    about approximately 30 additional individuals who appear to

10   be under age, based upon images and other materials on the

11   hard drive, who the Government -- as I said, this is an

12   ongoing investigation, and we are confirming the ages and

13   identities of these individuals even as we speak.  And I

14   imagine a week from now, two weeks from now, the Government

15   will have identified additional minor victims.

16             And so, we believe that, based on the defendant's

17   access to children, based on his conduct, based on the

18   threatening nature that was evidenced and laid out in the

19   letter brief, that the defendant is a danger to the

20   community, Judge.

21             And I will just note specifically relating to the

22   proposed bail package, I understand that defendant's family,

23   his parents have offered to house him; essentially to

24   password-protect their devices.  They even, in the latest

25   filing by defense counsel, have essentially what -- how the

1   Government reads it, have offered to get rid of any

2   electronic devices in their house or computers.  That would

3   be good, if the Court were inclined to potentially release

4   him, but there's simply -- cannot be a guarantee here that

5   the defendant will not get his hands on an electronic device

6   from someone.  There just -- there can't be.  Without being

7   monitored through continued detention, there's simply no way

8   to ensure the safety of the community as it related to this

9   conduct.

10          And, again, the Government pointed out in our

11  letter brief, that in terms of danger to the community, it

12  doesn't necessarily mean somebody who is causing physical

13  danger in the sense of there's no allegation here to date

14  that the defendant had any kind of intercourse or in-person

15  relationship with these children.  This isn't a case

16  involving a firearm or some other kind of case where the

17  Court may find a danger to the community.

18          But we will note, as we pointed out in our letter

19  brief, there have been instances before in other cases where

20  even nonphysical harm has been found to be a danger to the

21  community.  And so the -- that case was especially

22  illustrative of the point that even in a scenario like this

23  where the harm here, Judge, has been done over the Internet,

24  over social media applications, and social media platforms is

25  real harm and is a real danger.

1          And so we really hope the Court will keep that in

2   mind, because of the circumstances of the facts here.

3          And so we don't -- we believe that what's also

4   critically important in the Court's analysis regarding danger

5   is that this is a presumption case, Judge.  This is a

6   presumption of detention here.  The defendant must rebut it.

7   We simply do not believe that his bail package has come

8   anywhere close to adequately rebutting the presumption of

9   detention here.

10          And so we believe we've met our burden to show that

11   he's a danger to the community.  And I'll just note before I

12   conclude, regarding risk of flight, and the Government

13   outlined a few different scenarios in our letter brief

14   regarding why we believe he is a risk of flight, and I'll

15   just note them on the record, the important parts.  Count 1,

16   Judge, in the complaint, carries a mandatory minimum sentence

17   of 15 years in prison, a maximum potential sentence of 30

18   years in prison.  Count 3 carries a mandatory minimum of five

19   years in prison and a potential maximum sentence of 20 years

20   in prison.  Those are tremendously high numbers, Judge.  That

21   would be an incentive for anyone to flee, quite frankly.

22          And so, here, the defendant, if he is released,

23   like the factual scenarios laid out in our letter brief, he

24   would potentially have the means to flee, if he decided that

25   was something he wanted to do.  And so I think that's

1    something the Court should consider.

2            We understand he has no criminal record, and, of

3    course, better that than to have a criminal record.  We

4    recognize that.  We understand that.  The Government doesn't

5    reflexively ask for detention in every case.  We wouldn't

6    even potentially argue that a defendant with no record would

7    be a flight risk, except in this case, Judge, we think that

8    somebody who has no interaction with the criminal justice

9    system might be even more of a flight risk because of the

10   fact that this is such a strong case with such high potential

11   penalties, that the defendant, if he's released, we

12   understand the package is proposing that he wear an ankle

13   bracelet, but, again, we cited in our letter brief that an

14   ankle bracelet is not a be-all/end-all.  It's a good tool to

15   use to have someone's location, but those ankle bracelets can

16   be cut.

17           And we believe, again, that by a preponderance of

18   the evidence, we've demonstrated that the defendant would be

19   a risk of flight if he's released.  The proposed package that

20   his attorney has sent to Pretrial and to the Court, in our

21   view, is insufficient, and we concur, Judge, with Pretrial

22   Services, who is also recommending detention.

23           And so, again, because this is a presumption case,

24   we don't believe the defendant has adequately rebutted that

25   presumption.  We concur with Pretrial Services.  And because

1   he is a danger to the community and a flight risk, we ask

2   that you detain him -- order him detained pending the outcome

3   of this case.

4               THE COURT:  Thank you.

5               Mr. Zegas, would you like to be heard?

6               MR. ZEGAS:  I would appreciate that, Your Honor.

7               THE COURT:  Sure.

8               MR. ZEGAS:  Let me note at the outset that the

9   defendant objects to firstly, everything that was just said

10  by the U.S. attorney.  Under the Bail Reform Act, the defense

11  is permitted specifically to make proffers, but there is no

12  correlative right for the Government to do so.  And that's

13  just what Your Honor had heard here when references were made

14  to children, they said by and to children, acts taken.  That

15  would be hearsay.  We have no means of cross-examining what

16  was said.  But the Bail Reform Act specifically provides that

17  we do have a right of cross-examination and proffers render

18  that meaningless.  This is not a case where an indictment has

19  been returned and a grand jury has made a finding of probable

20  cause.  So the State wants to contend, as it has -- the

21  Government wants to contend, as it has, I would submit that

22  they must produce witnesses that are subject to examination

23  by the defense for their reliability, ability to relate

24  details and narrate.  And it's not been done.

25              This particular defendant has an absolute clean

1   record, and I would note that there's some things that were

2   said in the Pretrial Services report which need correction,

3   because they're not accurate.  For example, Pretrial Services

4   says that the defendant has resided at 140 -- Avenue since

5   2014, but he actually has resided there since 2012.

6            It also references that his last trip abroad was to

7   Saint Thomas in 2011 -- there was actually 2007.

8            And then I would note that with respect to his

9   family ties to California, he has a sister there.  And

10  Pretrial Services report states that she's been there since

11  2012.  But Steven has never visited her, as the report

12  suggests.

13           He has suffered from Tourette's Syndrome, and he

14  sought out a therapist, which would prescribed the drug

15  Risperdal, which was a dangerous drug.  And he experienced

16  side effects for one to two years which are apparently common

17  to issues with the drug.  And he recovered some money as a

18  result a lawsuit instituted by J -- against J & J.  And that

19  is part of what is seen in his checking account.

20           I'd also note that to the extent that he has money

21  in his savings or checking accounts, he would be willing to

22  put that into trust so that there -- not have access to it

23  and could not use it for flight, as the Government seems to

24  be suggesting he might be encouraged to do.

25           The defendant, we would propose, that more than

1  sufficient means exist to protect the -- against the risk of

2  flight and the safety of the community.  And what we would

3  suggest is that Steven be released into the custody of his

4  parents, Mr. Sheldon and Mrs. Regina Brooks, and that they

5  co-sign a bond in an amount to be determined by this Court,

6  which they would be willing to do and Steven would be willing

7  to do the same.  So it would be a financial interest in

8  ensuring that his parents keep him here.  And I would note

9  that Pretrial Services found that -- they met -- they were

10 appropriate guardians --

11          And we would submit that Steven would reside in his

12 parents' home in Livingston, subject to electronic

13 monitoring.  And as I noted, he's never been accused of a

14 crime in his life before.  That he prohibited from accessing

15 any electronic devices or having any access to the Internet

16 or possess any illicit materials.

17          He has an expired passport, which he would

18 surrender.

19          And I noted Pretrial Services has conducted an

20 investigation into the parents as third-party custodians and

21 found they were appropriate candidates.

22          Initially, Mr. Brooks, the father, Sheldon, was

23 said to be unwilling to remove all computers and

24 Internet-connected devices.  But initially indicated a

25 willingness to password-protect everything.  Since then, he

|Bail Hearing
|21-mj-09067, March 19, 2021

1   has agreed that if need be, he'll remove all computers and

2   Internet-corrected devices to the Internet from the home, so

3   there would be nothing there that Steven could access.

4         The Pretrial Services report said they had

5   conducted on March 10th of this year an investigation and

6   found that Steven has no history of charges.

7         If confined to the home under the care and custody

8   of his parents, we would suggest that Steven be isolated in

9   the home except for medical treatment, court appearances, and

10  conferences with counsel and that he be placed on an

11  electronic bracelet.

12        We also submit that Mr. Brooks should be barred

13  from communicating through any Internet service or any social

14  network and that his father would ensure that any

15  Internet-connected devices, even stuff outside the home,

16  would be password-protected.

17        And Mr. Brooks, the father, and the mother and

18  Steven would agree that there should be mandatory monitoring

19  any electronic devices, inside the home, outside the home, no

20  matter where.  Pretrial Services could keep careful track on

21  what he's doing.

22        We also submit that there should be a prohibition

23  of the possession of any material depicting any form of

24  sexually explicit conduct and that Mr. Brooks' passport be

25  surrendered.

1              I would note that under the law, whether --

2    determining if Mr. Brooks will pose a flight risk -- nature

3    and circumstance of the offense charged, the weight of the

4    evidence against the person, the history and characteristics

5    of the person, and the nature and seriousness of the danger

6    to any person or the community that would be posed, were

7    Steven to be released.  Factors 3 and 4 are easily satisfied

8    by the willingness of Steven's parents to support and

9    supervise him and to agree to a combination of restrictive

10   conditions that would ensure that he would not be risk of

11   flight or danger.

12             Steven spent his entire life in the state of New

13   Jersey.  He has never had any criminal convictions or

14   arrests.  And aside from family vacations taken with his

15   family -- taken as a child, he's not traveled extensively

16   outside the country, but for a trip to Saint Thomas in 2007

17   with his high school basketball team.

18             As noted, his passport is current expired.

19             And though he has a sister in California, he's

20   never visited her.

21             I would submit that all of these things safeguard

22   against any risk that the defendant will pose a flight risk.

23             Now, with respect to the Government's contention

24   that Steven poses a danger to the community, I would note

25   that the offense is charged -- and as I said, I don't think

1   they've been properly raised because many facts have been

2   raised by proffer -- there were entirely Internet-based.

3   There's no history of evidence of Mr. Brooks attempting any

4   type of crime in a nonvirtual space.  And release of him into

5   the parents' home, given the restrictions that would be

6   imposed, would suggest that he is not at all a risk of

7   flight.  And his parents will ensure that his presence in the

8   home will safeguard the interests of the community and

9   prevent Mr. Brooks from interacting with the public at all,

10  because he has no means of communicating under the proposal

11  that we're making.

12          And with removal of all devices, I don't see what

13  risk there is.  You know, the Government contends that

14  there's this enormous risk, but he doesn't -- will not have

15  access to a means of communication.  And he would need to

16  have that in order to endanger the community in the way that

17  the Government suggests that he would.  And there's really no

18  grounds for that -- rational grounds for that belief.

19          So I would submit that, given our proposals, which

20  are highly detailed, which isolate Steven, which require that

21  he be monitored, like ankle monitor and by his parents and

22  they have no means of communication, more than satisfy any

23  concern that he would pose a danger to the community or a

24  risk of flight.

25          And I would ask that Your Honor set bail in an

1   amount that you believe to be sufficient to ensure the

2   interests that the Court has, were to release him.

3            Thank you.

4            THE COURT:  Thank you very much.

5            MR. ZEGAS:  My pleasure.

6            THE COURT:  All right.  Well, I have -- not that it

7   matters to anyone -- certainly agonized over the -- this type

8   of case, and this decision, this request for release under

9   18 U.S.C. 3142.

10           But after very carefully reading everything, I

11  am -- I conclude the defendant poses a grave danger to the

12  community, specifically to children; perhaps to others.

13           And I also believe that under the totality of the

14  circumstances here, putting together the defendant's lack of

15  criminal record -- usually it works the other way -- and the

16  strength of the evidence, as set forth by the Government, and

17  the amount of time that the defendant is facing, that there

18  is a genuine risk of flight.  When someone is -- you know, is

19  facing those kinds of penalties -- not saying that he'll be

20  convicted; I am not saying that that will -- you know, that

21  those will be the penalties -- but one could argue there's

22  not much -- there's not that much of a downside to cutting a

23  bracelet and trying to, you know, flee.  And then once doing

24  that, if we assume that -- and I have no -- this is just

25  assumption, the defendant has some kind of -- "perhaps" is

1    not the right word -- compulsion to be involved in these

2    kinds of activities, could be very dangerous to the

3    community.

4              The charges are child pornography, also recruitment

5    of members to send sexually explicit images.  Apparently, as

6    the prosecution said that when some of the alleged victims

7    tried to cut off communication, there were threatening

8    messages sent to them to get more images.  And in a sense --

9    and actually in the law, this is akin in some ways to a crime

10   of violence.

11             Two of the three charges carry a rebuttable

12   presumption of detention.  It's production of child porn,

13   18 U.S.C. § 2251(a) and also 18 U.S.C. 3142(e)(3)(E) and (A),

14   and in mailing the child pornography, 2252 --  and I conclude

15   that the defendant has not adequately rebutted the

16   presumption of detention, looking at the nature and the

17   circumstances of the offense and the history and

18   characteristics of the defendant.

19             The package, although substantial -- and I

20   certainly would say that the defendant's -- and counsel --

21   have done hard work to come up with the best package

22   possible, but I am not satisfied that it reasonably

23   assures -- or addresses the flight risk.  And I think -- I

24   think it would be improper not to address that.

25             And I do note that Pretrial Services, after

1   initially taking the position they want to investigate the

2   situation, I'm going to rely to some extent on their

3   expertise, has recommended that bail not be set in this case;

4   the defendant be detained.  It seems the allegations are

5   strong.

6            Defendant was a school teacher and worked around

7   minors.  He may have known some of the victims.  It could be

8   that the location where he would be returning to is --

9   there's some proximity to where some of the alleged victims

10  are.  That concerns me in a lot of different ways, even in

11  terms of everyone's safety, because these are such a loaded

12  issue.

13           And the Bail Reform Act focuses on flight risk and

14  safety of the community.  And the Act considers -- I think

15  both lawyers said -- the nature of the offense, the weight of

16  the evidence, the history and characteristics of the

17  defendant, and the nature of the danger to the community.

18  Obviously, the crimes charged carry statutory presumptions

19  that suggest that no condition or combination of conditions

20  could reasonably assure safety.  The kind of crimes are

21  charged are -- the weight of the evidence seems strong.  The

22  sheer number of the videos -- and I am not counting any of

23  the things that Mr. Levin said that, you know, that may be

24  discovered in the future; I'm just completely discounting

25  that.  I am not saying that won't happen, and I understand

1  it.

2          But so really what it boils down to is home

3  confinement with his parents and password-protecting or

4  may -- maybe now I see that, you know, eliminating the

5  electronic devices, computers, and monitoring by the --

6  admittedly through third-party custodians.

7          And those are sort of the standard kinds of things

8  that might be set in a case where it was simply limited to

9  someone downloading images on a computer.

10         But here there is more.  And when I think that, you

11 know -- and if I heard Mr. Levin correctly -- I don't know if

12 it's true -- I mean, it seems like with mandatory minimums,

13 if conviction, of 15 and 5, and then maximum of 30 and 20,

14 you know, those kinds of years -- and those kinds of things

15 are -- I don't see that that could be ignored in terms of a

16 flight risk.  And I think it's creative that Mr. Zegas talked

17 about placing resources into a trust that might make it more

18 difficult.

19         But without regard to how successful flight would

20 be, I think the defendant still would have access to the

21 sufficient resources to cut the bracelet.  I am not

22 encouraging this, but if you are facing the kind of time that

23 we're talking about in this kind of a thing, if we assume

24 that the defendant is inclined as some kind of compulsion --

25 and maybe that's the wrong thing to say or use, but I'm using

1   my judgment and experience in the world, that I don't -- one

2   could argue that it's not inconceivable that someone would do

3   that, would take a chance.  I mean, they're already facing so

4   much time.  And, you know, take off the monitoring equipment

5   and go back to this very difficult, very troublesome

6   activity.

7           Of course, that can be said in a lot of cases.

8   These are special kinds of cases.  So my decision is based on

9   the combination of danger and risk of flight and, really --

10  really the combination of those together.  You know, in terms

11  of -- electronic devices are so prolific in our society, that

12  maybe something could be ordered from one of those online --

13  like an Amazon thing or someone could, you know, drop off a

14  burner phone or other things could happen and -- unless the

15  defendant was being monitored or watched every minute of

16  every day.

17          So I don't believe that what has been offered is

18  enough to rebut the presumption.  And I'm going to find that

19  the bail package proposed is insufficient.

20          And while I'm making that ruling, I am not

21  absolutely convinced, although I'm almost absolutely

22  convinced and strongly suspect that no condition or

23  combination of conditions would reasonably address risk of

24  flight and danger.  I'm going to find that the bail package

25  being offered is -- proposed is insufficient, does not rebut

1    the presumption.  And bail is denied.

2            If defendant and his advisors can somehow come up

3    with a set of conditions -- and I can't imagine what they'd

4    be and I am not an expert, and I can't -- I don't know what

5    else, if anything, would be available -- and I am not trying

6    to give anyone false hope, but I would be willing to consider

7    them at that time.

8            That is my ruling.

9            Is there anything further?

10            MR. ZEGAS:  No, thank you, Your Honor.

11            MR. LEVIN:  No, Judge.  Thank you.

12            THE COURT:  All right.  I wish you all a good day

13    and good luck.  Take care.

14            MR. ZEGAS:  Thank you, Judge.

15                    (Conclusion of proceedings)

16

17

18

19

20

21

22

23

24

25

1                          Certification

2          I, SARA L. KERN, Transcriptionist, do hereby certify

3     that the 25 pages contained herein constitute a full, true,

4     and accurate transcript from the official electronic

5     recording of the proceedings had in the above-entitled

6     matter; that research was performed on the spelling of proper

7     names and utilizing the information provided, but that in

8     many cases the spellings were educated guesses; that the

9     transcript was prepared by me or under my direction and was

10    done to the best of my skill and ability.

11         I further certify that I am in no way related to any of

12    the parties hereto nor am I in any way interested in the

13    outcome hereof.

14

15

16

17

18    s/ *Sara L. Kern*                      21st of April, 2021

19    _____     _____
      Signature of Approved Transcriber               Date

20

21
      Sara L. Kern, CET**D-338
22    King Transcription Services
      3 South Corporate Drive, Suite 203
23    Riverdale, NJ  07457
      (973) 237-6080

24

25