# Law Offices of Alan L. Zegas

60 Morris Turnpike
3rd Floor West
Summit, NJ 07901
_____

phone:     973-379-1999
fax:          973-379-1998
www.zegaslaw.com

Alan L. Zegas (NJ, NY, SDNY, & EDNY Bars)
Joshua Nahum (NJ, NY, & SDNY Bars)

azegas@zegaslaw.com
jnahum@zegaslaw.com

May 5, 2021

**VIA ECF**
Honorable John Michael Vazquez
United States District Judge
Post Office & U.S. Courthouse
2 Federal Square
Newark, NJ 07102

Re:     United States v. Brooks
         Crim No. 21-314

Honorable Judge Vazquez:

As you are aware, this office represents the Defendant, Steven Brooks ("Defendant" or "Mr. Brooks"), in this matter. Please accept this letter brief in further support of Mr. Brooks' motion for pretrial release.

Mr. Brooks has proposed a series of release conditions that will ensure that he is neither a flight risk, nor a risk to anyone in the community. Further, pretrial release will allow Mr. Brooks to have meaningful consultations with counsel in order to prepare his case. These factors counsel in favor of Mr. Brooks' pretrial release.

The proposed release conditions ensure that Mr. Brooks poses no risk of flight. Mr. Brooks has proposed being released into the custody of his parents, whom Pretrial Services has determined are suitable custodians. In addition to monitoring by his parents, Mr. Brooks would be subject to an ankle monitor to ensure that he does not leave his

1

parents' home for anything other than approved reasons.  In addition, Mr. Brooks will place any of his assets in trust so that they are not accessible to him and surrender his expired passport.  His parents are willing to post a bond with collateral further ensuring that Mr. Brooks will not flee.  These monitoring conditions are highly restrictive and will prevent flight.

Further, Mr. Brooks has no ties outside of the jurisdiction.  He has rarely traveled outside of the country and his passport is expired.  He does not have family or friends who reside outside of the country.  There is no indication that he would have any way to support himself or survive outside of the country.  Even with respect to his only sibling who resides in California, he has never visited her there over the past decade.  Mr. Brooks has no connections or means by which to flee the jurisdiction.  The government has not made any showing that flight is likely under such circumstances, relying instead on the severity of the charges.  Yet, the government has made no showing based on Mr. Brooks' specific circumstances, or based on statistical incidences of flight that there is any flight risk.  Rather, the government only speculates that he is a flight risk based on supposition and the nature of the charges.  This is insufficient.  Mr. Brooks poses no flight risk and detention is unnecessary on that ground.

The proposed release conditions also ensure that Mr. Brooks is not a danger to the community.  Indeed, the proposed conditions make it almost impossible for him to interact with the community at large.  In addition to home confinement, Mr. Brooks' parents have committed to removing all internet connected devices from the home. While the government argues that this does not guarantee that there will be no access to the internet because Mr. Brooks could obtain surreptitious access to an internet-connected

device, there has been no showing that any such thing is likely or possible. The Magistrate's concern over the potential for ordering a device from Amazon or receipt of a "burner phone" are mitigated by the inability to access Amazon through the internet. Likewise, there has been no showing of any sort of confidant who would provide an internet-connected phone to Mr. Brooks. Rather, Mr. Brooks' parents have proposed further conditions to limit internet access. Mr. Brooks' parents will terminate their internet services so that no internet service is provided to the house. Similarly, they will relinquish their smart phones and replace them with non-internet connected cellular phones. In short, the home where Mr. Brooks will reside will completely lack internet access. Without internet access, and with home confinement, it would be effectively impossible for Mr. Brooks to interact with the community at all. He will not be able to contact alleged victims, nor will he be able to contact anyone else. Under such circumstances Mr. Brooks does not and cannot pose a risk of any sort of harm to the community. Likewise, Mr. Brooks' parents' willingness to post a bond for his relief demonstrates their strong belief that Mr. Brooks will not visit harm on the community, as any such further harm would forfeit the bond. Because his family support, non-existent internet access, and monitoring conditions render it impossible for Mr. Brooks to harm the community, his release will not pose a danger to the community, and pretrial release is appropriate.

Release is necessary so that Mr. Brooks can adequately meet with counsel to prepare his defense. The Covid-19 pandemic has drastically impacted the prison system and the systems have had to implement drastic protocols as a result. At the Hudson County facility, as the government notes, attorneys can only meet with clients via video

3

conference, or in a scheduled non-contact visit where the parties are separated by glass. The video conferencing software and hardware, despite over a year of pandemic restrictions, is woefully inadequate.  Despite several video conferences with Mr. Brooks, every conference has suffered from malfunctions in the video, audio, or both.  Further, the video conferencing software lacks the necessarily functionality for the parties to simultaneously review paper documents or digital files.  In a non-contact visit, it is similarly impossible to share and review discovery with Mr. Brooks.  It is not possible to pass documents back and forth or review electronic documents in such a setting.  The current restrictions make it nearly impossible for Mr. Brooks to adequately assist counsel in preparing his defense.

The difficulties in meeting with counsel, coupled with the delays in scheduling precipitated by the pandemic, weigh in favor of pretrial release.  Contrary to the government's argument, United States v. Deutsch, Docket No. 18-cr-502, 2020 WL 3106383, at *2 (E.D.N.Y. June 4, 2020) does not stand for the proposition that release was appropriate because a trial was imminent.  Rather, it holds the opposite – that because trial was indefinitely delayed, continued detention was not appropriate.  The court observed that release was appropriate because "defendant's right to his trial remains in suspended animation." Id.  Further, the defendant in Deutsch faces factual allegations strikingly similar to those of Mr. Brooks, both with respect to the charges made, and the conduct alleged.  In Deutsch the defendant was released, to a foreign jurisdiction, with

4

fewer restrictions than those proposed by Mr. Brooks.[1]  Mr. Brooks' release on the terms proposed is appropriate.

Mr. Brooks has put forward compelling conditions that will ensure he is neither a flight risk, nor a danger to the community.  He has proposed onerous conditions for his release that will eliminate his ability to access the internet.  He has likewise put forward financial conditions that would carry severe consequences for his parents should he violate the terms of his release.  His parents' willingness to accept this responsibility further demonstrates that Mr. Brooks does not pose a risk of flight or danger to the

---

[1] The cases relied upon by the government regarding the pretrial release of defendants during the pandemic are inapposite.  In United States v. Olszewski, Docket No. 15-cr-364, 2020 WL 2420483 (S.D.N.Y. May 5, 2020) the defendant was already convicted and sentenced.  His motion was for compassionate release or furlough.  Id. at 1.  The posture and considerations are not the same.  In both United States v. Dawara, Docket No. 19-414-1, 2020 WL 2404898 (E.D. Pa. May 12, 2020) and United States v. Landji, Docket No. 18-cr-601, 2020 WL 1674070 (S.D.N.Y. Apr. 5, 2020) pretrial detention was not determined solely on the ability to meaningfully meet with counsel, but was primarily concerned with the flight risk posed by the defendants.  In Dawara the defendant had immigrated to the United States from Syria and had returned there in the past year. Dawara, 2020 WL 2404898, at *5-6.  Additionally, in that case there was the indication that letters in support of his release had been solicited under false pretenses.  Id.  In Landji the defendant was from Gabon, and for the preceding ten years before his arrest had resided in Gabon and Mali.  Landji, 2020 WL 1674070, at *3-4.  He had no permanent residence in the United States and proffered no location where he would live if released.  Id.  The concerns of flight predominated in the courts' analyses in these cases and those concerns are absent here.  In United States v. Corbitt, Docket No. 20-cr-00030, 2020 WL 2098271 (M.D. Pa. May 1, 2020), the defendant's circumstances were completely different from those in the present case.  In Corbitt, the defendant was arrested while on pretrial release and house arrest for state charges.  Id. at *1.  Further, the defendant had a lengthy criminal history including convictions for aggravated assault and solicitation to commit homicide.  Id.  Under those circumstances the court determined to detain defendant.  To the extent the court addressed Covid-19 it was primarily with respect to risks of infection, not with how visitation restrictions impeded preparation of a defense.  Id. at *4-8.  The cases relied upon by the government are substantially different from the case of the Defendant here and do not compel detention.

community.  Accordingly, the balance of factors weighs in favor of granting Mr. Brooks pretrial release.

Based upon the foregoing Mr. Brooks respectfully requests that the court grant him pretrial release upon the terms proposed, along with any such other terms the Court deems necessary.

Respectfully submitted,
LAW OFFICE OF ALAN L. ZEGAS

By: Joshua M. Nahum